10/27/14 vers

## AGREEMENT OF SALE AND CONSTRUCTION AGREEMENT

THIS AGREEMENT made this 22 day of October, 2014, BETWEEN **FALLING CREEK, LLC**, a Pennsylvania limited liability company with an address of 696 Seven Bridge Road, East Stroudsburg, Pennsylvania 18301, hereinafter called "Seller", and **BENEDICT V. SOKOLOWSKI and LYNDA J. SOKOLOWSKI**, husband and wife, of 2211 Brooke Circle, Watervliet, New York 12189, hereinafter called "Buyer",

WITNESSETH:

That Seller hereby agrees to sell and convey to Buyer, who hereby agrees to purchase:

ALL THAT CERTAIN lot, parcel or piece of ground situate in the Township of Lehman, County of Pike and Commonwealth of Pennsylvania, known as Lot No. 5, Falling Creek Estates, as shown on a plan of lots of Falling Creek Estates recorded in the Office of the Recorder of Deeds in and for the County of Pike, at Milford, Pennsylvania, in Plat Book Volume 42, Page 21 (the "Property"),

BEING THE SAME PREMISES which Steven P. Parisi and Colleen E. Parisi, husband and wife, by Deed dated March 28, 2011, and recorded in the Office for the Recording of Deeds, &c., in and for the County of Pike, at Milford, Pennsylvania, in Book 2360, Page 719, granted and conveyed unto Falling Creek, LLC, a Pennsylvania limited liability company, Seller hereof, in fee,

Together with the single family dwelling in the process of being constructed on the Property by Seller (the Property and the single family dwelling and other improvements being constructed thereon are sometimes hereinafter collectively referred to as the "Premises"),

upon the following terms and conditions, to wit:

1.       The price or consideration for the Premises is **FOUR HUNDRED NINETY THOUSAND TWO HUNDRED SIXTEEN AND 00/100 ($490,216.00) DOLLARS**, Sixty

1

Thousand and 00/100 ($60,000.00) Dollars of which is allocated to the purchase of the Property, and the remainder of Four Hundred Thirty Thousand Two Hundred Sixteen and 00/100 ($430,216.00) Dollars which is allocated to the construction of the single family dwelling and other improvements being constructed on the Property, will be paid to Seller by Buyer, as follows:

(a) The sum of Seventy Thousand and 00/100 ($70,000.00) Dollars which has been previously paid by Buyer to Seller and incorporated by Seller into the single family dwelling under construction, receipt whereof is hereby acknowledged.

(b) The sum of Thirty Thousand and 00/100 ($30,000.00) Dollars in cash or current funds upon the execution of this Agreement, receipt whereof is hereby acknowledged.

(c) The balance in the amount of Three Hundred Ninety Thousand Two Hundred Sixteen and 00/100 ($390,216.00) Dollars, in accordance with the requirements of the financial institution providing mortgage financing to Buyer. Buyer agrees that each respective payment will become due and will be authorized in writing to be paid to Seller after receipt of notification from Seller that the respective stage of the work to which the payment relates, designated as a payment stage on the aforesaid financial institution's payment schedule, has been completed and after inspection and approval of such work by Buyer or Buyer's agent. Said inspection shall be performed and approval or disapproval of such work shall be made by Buyer or Buyer's agent within ten (10) days after the aforementioned notification has been received from Seller. If payment is not authorized by Buyer within ten (10) days of the date of receipt of such notification, and the work has been inspected and approved as aforesaid (or Buyer fails to inspect the work within said ten (10) day period), Seller may stop work until the scheduled payment is made, provided Seller is not in

2

violation or breach of this Agreement.

2.      The Premises are to be conveyed free and clear of all liens, encumbrances, and easements, EXCEPTING HOWEVER the following: existing deed restrictions, ordinances, easements of roads, easements visible upon the ground and privileges or rights of public service companies, if any, provided none of the foregoing interfere with the use and enjoyment of the Property for usual and customary single family residential purposes, and provided further that easements of roads and privileges or rights of public service companies shall be limited to such easements, privileges and rights as are open, in place and visible upon inspection; otherwise the title to the above-described real estate shall be good and marketable and such as will be insured by any reputable title insurance company doing business in Pike County, Pennsylvania, at the regular rates.

3.      Settlement shall be made on or before the 26th day of November, A.D. 2014 at the offices of Cramer, Swetz, McManus, & Jordan, P.C., 711 Sarah Street, Stroudsburg, Pennsylvania 18360, or at such other location as may be mutually agreed upon by the parties, said time to be of the essence of this Agreement, unless extended by mutual consent in writing.

4.      Taxes, rents, homeowners association fees, water and sewer rental, if any, shall be apportioned pro rata as of the date of Settlement. All Real Estate Transfer Taxes imposed by any government body, to the maximum amount of two (2%) percent of the purchase price, shall be paid by Buyer. The cost of preparation of the Deed shall be the sole responsibility of Seller. The recording fees with respect to the Deed shall be the responsibility of Buyer.

5.      Tender of an executed Deed and purchase money is hereby waived.

6.      All soils, minerals, trees, shrubbery, and plantings now in or on the on the

3

10/21/14 vers

Property, together with the single family dwelling (and all parts of components thereof) currently being constructed on the Premises, are included in the sale and purchase price, and shall become the property of the Buyer at the time of Settlement.

7.     In the event the Seller is unable to give good and marketable title and such as will be insured by any reputable title insurance company, as above set forth, Buyer shall have the option of taking such title as the Seller can give without abatement of price, or of being repaid all monies paid on account by Buyer and being reimbursed for any attorney fees and any title search/insurance charges incurred; and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this Agreement shall become null and void.

8.     Should the Buyer violate or fail to fulfill and perform any of the material terms or conditions of this Agreement and fail to cure the same within a reasonable period of time under the circumstances after receipt of notification by Seller to do so, then and in that event Seller may terminate this Agreement, and in that event, all sums paid by the Buyer on account of the purchase price or consideration herein, shall be retained by the Seller as liquidated damages for such breach, and the Seller and Buyer shall be released from all liability or obligation and this Agreement shall become null and void.

9.     All risk of loss or damage to the Premises, of any nature whatsoever, between the date of this Agreement and the time of Settlement shall remain upon Seller. In the event of any such loss or damage, Buyer, in Buyer's sole discretion, shall have the option of taking said Premises in their then condition, together with any and all insurance proceeds paid by reason of said loss and/or damage to the same, or of terminating this Agreement, and in the latter event, all of the

4

10/21/14 vars

deposit money shall be refunded to Buyer, this Agreement shall become null and void, and there shall be no further liability or obligation by either of the parties hereunder.

10. Seller covenants and represents as of the date of this Agreement that no assessments for public or Association improvements have been made against the Premises which remain unpaid and that no notice by the Association or by any governmental or public authority has been served upon the Seller or anyone on the Seller's behalf, including notices relating to violations of deed restrictions, housing, building, safety, subdivision, zoning or fire ordinances which remain uncorrected, and that Seller has no knowledge of any such violations or the pending issuance of any such notices.

11. Seller hereby grants to Buyer the right to enter the Premises at any time after the execution of this Agreement together with Buyer's agents, contractors, representatives, employees and/or licensees, equipment and materials, for the following purposes:

(a) To make such inspections, tests, studies, and examinations of any nature with respect to the Premises as Buyer may elect, or Buyer's lender may require, provided that all such inspections, tests, studies and examinations shall be at the sole cost and expense of Buyer, and upon completion of the same the Premises shall be properly restored by Buyer, at Buyer's sole cost and expense, to the condition existing immediately prior to the performance of such studies, tests and inspections.

(b) To make an accurate survey of the boundaries of the Property, showing the exact location of any encroachments, easements, rights-of-way, covenants or restrictions burdening or appurtenant to the Property, any improvements thereon, and any streets, alleys, ways

5

and highways bordering the Property.

    12.    (a) Seller hereby warrants and represents, that to the best of the knowledge, information and belief of Seller, no hazardous or toxic substances or materials are or have been stored, discharged or disposed of on or into the Premises and no contamination is present on the Premises; and

    (b)   There are no regulatory actions or third party claims pending, or threatened against Seller or the Premises, with respect to any environmental matters.

The provisions of this paragraph 12 shall survive settlement, and shall not merge in the deed.

    13.    Seller hereby represents, warrants and covenants to Buyer, which representations, warranties and covenants shall be deemed made by Seller to Buyer both as of the date of this Agreement and as of the date of Settlement, to wit:

    (a)    To the best of Seller's knowledge, information and belief, all improvements, including fences, hedges and monuments, if any, are erected within or on the title lines of the Property, and no part thereof encroaches upon lands of adjoining owners and that there are no encroachments upon said Property by the owners of adjoining lands; and there are no disputes with any adjoining property owners as to the location of property lines or the encroachment of any improvements; and

    (b)    There are no unrecorded leases or agreements effecting the Premises, other than this Agreement, between the parties to this transaction; and

    (c)    Seller is in actual possession of the entire Premises and there is no adverse occupancy of, or adverse claims of title to, said Premises or any part thereof; and

6

(d)    No alterations or improvements have been made to, and no fixtures, materials or equipment have been placed upon, the Premises during Seller's ownership which have not been paid for in full; and

(e)    The Premises has full and free access to and from public highways, streets or roads, and to the best of the knowledge, information and belief of Seller, there is no pending or threatened governmental proceeding which would impair or result in the termination of such access; and

(f)    That there is no bulk storage of petroleum in or on the Premises and Seller agrees to deliver an appropriate affidavit to that effect at Settlement and closing; and

(g)    Seller has not contracted to sell, pledge or collateralize all or any part of said Premises, and there are no contracts or agreements involving Seller which will bind this purchase and sale, or which will survive Settlement, not specifically set forth herein; and

(h)    Seller is a limited liability company duly organized, validity existing and in good standing under the laws of the Commonwealth of Pennsylvania.

(i)    All necessary limited liability company formalities have been complied with in respect to this transaction, and the same has been duly authorized by Seller.

(j)    Entry into and performance of this Agreement will not result in any breach of, or constitute a default under, any arrangement, agreement or other instrument or document to which Seller is a party or by which Seller is bound or affected, and will not violate Seller's Certificate of Organization or Operating Agreement.

(k)    There are no actions, suits, arbitrations or other legal, administrative or

7

governmental proceedings pending or threatened against Seller, its properties, assets or business, and Seller is not aware of any facts which to Seller's knowledge might result in any such action, suit, arbitration or other proceedings.

(l)    Jacob Rybner is duly authorized by Seller to negotiate and execute this Agreement on Seller's behalf.

(m)    To the best of Seller's knowledge, information and belief, there are no wetlands on the Premises.

(n).    Seller has obtained all required permits and approvals for the construction of the single family dwelling currently under construction on the Property.

(o).    The Premises will receive central sewer service from Pennsylvania American Water, and that the Premises are already connect to that central sewer system.

All of the foregoing representations, warranties and covenants shall survive Settlement and shall not merge in the deed.

14.    Seller shall indemnify and hold Buyer harmless against, and defend Buyer from, any and all claims, demands, actions, losses and liabilities respecting the Premises, including interest, penalties and reasonable attorney's fees, that Buyer may suffer, incur, be put to or pay by reason of Seller's breach of any representation, warranty, covenant, promise or agreement set forth in this Agreement or in any exhibit, schedule or other document or instrument attached hereto or furnished, or to be furnished, by Seller under this Agreement.

15.    Seller expressly agrees to be responsible for any and all real estate commissions

8

and/or finder's fees in any way related to this purchase and sale of the Premises. Buyer represents that Buyer has not engaged the services of any realtor nor agreed that anyone will receive any real estate commission, in relation to this transaction.

16.     (a)     Buyer acknowledges that the Property is part of a planned community as defined by the Uniform Planned Community Act (the "Act").

(b)     Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the Declaration (other than plats and plans), the by-laws, the rules and regulations of the association, and a Certificate containing the provisions set forth in Section 5407(a) of the Act.

(c)     Within five (5) days of the complete execution of this Agreement by all parties, Seller shall submit a request to the association for a Certificate and the documents necessary to enable Seller to comply with the Act. The Act provides that the association is required to provide these documents within ten (10) days of Seller's request.

(d)     Under the Act, Seller is not liable to Buyer for the failure or delay of the association to provide the Certificate in a timely manner, nor is Seller liable to Buyer for any erroneous information provided by the Association and included in the Certificate.

(e)     Buyer may declare the Agreement of Sale VOID at any time before Buyer's receipt of the Certificate and for five (5) days thereafter, OR until Settlement, whichever occurs first. Buyer's notice declaring the Agreement void must be in writing; thereafter all monies paid on account shall be promptly returned by Seller to Buyer.

17.     Seller, in consideration of the agreements herein made, agrees to and with Buyer, to provide all work and materials to erect and construct upon the Property a single-family dwelling in

9

accordance with the price list, drawings, plans and specifications attached hereto as Exhibit "A" and incorporated herein by reference as though fully set forth at length, and deliver the same to Buyer completed and ready for occupancy on or before February 1, 2015, unless prevented by conditions beyond the reasonable control of the Seller, which include strikes, lock-outs, unavailability of material, natural disaster, or acts of God, in which event the time of completion hereunder shall be extended for such period of time as occasioned by such condition. Should any material be unavailable, the Seller reserves the right to substitute equal or better quality material (provided it be recognized in the construction industry as equal or better than that specified), which is substantially similar in construction and design, at the Seller's discretion, at no additional cost to Buyer; provided, however, that any substituted materials which will affect the appearance or utility value must be first approved by Buyer in writing, which approval or disapproval shall be given by Buyer within ten (10) days after receipt of notification from Seller. Buyer shall have no obligation to authorize the payment of the final construction payment installment until all of said work is substantially completed, all required certificates of occupancy for both zoning and Uniform Construction Code purposes have been issued, and the Punch List (as defined in Paragraph 27) has been entered into.

18.     Seller agrees to perform all work and to complete said structure in a good and workmanlike manner, with due diligence, and further agrees that all materials utilized for this project shall be new and of good quality.

19.     All materials are furnished to Buyer together with the warranties and guaranties which Seller receives from the manufacturer and/or Seller's supplies and sub-contractors. Seller warrants and guaranties that all materials and workmanship shall be free from defects for a period of at least

10

one (1) year after possession is delivered to Buyer. Seller shall promptly, and with due diligence, furnish all necessary labor and materials to make any required repairs and adjustments, without cost to Buyer, at least for the entire period of the warranty, at Seller's cost and expense. Should Seller fail to do so, Buyer, at Buyer's option, after five (5) days written notice to Seller, may furnish such material and labor to make any required repairs and adjustments and Seller shall reimburse Buyer for the cost thereof upon demand. The provisions of the paragraph shall survive Settlement and shall not be merged therein.

20.     This Agreement is expressly contingent upon all approvals, zoning permits, building permits and any other permits necessary to complete construction (with the exception of a certificate of occupancy) being obtained on or before Settlement. In the event all of said approvals and permits cannot be obtained on or before Settlement, any and all deposit monies and/or monies paid on account, shall be returned to Buyer, this Agreement shall become null and void, and there shall be no further liability or obligation by either party hereunder.

21.     During the progress of said work, Seller shall adequately protect said work, and shall protect adjacent properties, and their buyers, from injury and/or damage in the performance of this Agreement, and shall make good any such damages and/or injuries especially such as may directly arise out of the performance of this Agreement. After Settlement and during the progress of said work, Buyer will maintain insurance upon said Premises for which said work is being performed against loss or damage by fire or other risks covered by the usual extended coverage endorsement. Seller agrees to carry comprehensive general liability insurance with combined single limits of at least $1,000,000.00 for personal injury and $1,000,000.00 for property damage, "Builders Risk"

11

10/21/14 vms

insurance, workmen's compensation insurance, and Seller shall require all of Seller's sub-contractors to carry workmen's compensation insurance, and such other insurance as will protect Buyer and the work from any claim for damages for personal injuries, death, and any loss or damage to property arising from, or related to, the performance of this Agreement. Seller further agrees to indemnify and hold Buyer harmless from and against any and all claims, damages, losses, costs and expenses, including reasonable attorney's fees, which may be filed or incurred as a result of bodily injury, illness or death, or for property damage, including loss of use, caused in whole or in part by Seller's intentional or negligent acts or omissions, or that of any sub-contractor or materialman, or any agent or employee of the same.

22.     Seller shall obtain any and all approvals, licenses, permits, and certificates required for the performance and completion of the work under this Agreement, at Seller's sole cost and expense. Seller shall also give all notices and comply with all laws, ordinances, rules, regulations and building, sewage, and zoning restrictions and codes bearing on the conduct of the work.

23.     Selection of colors and materials by Buyer shall be made in writing to Seller and acknowledged by both parties.

24.     It is understood that Seller will sub-contract all or portions of the work to be performed hereunder, but all such work shall be subject to the terms of this Agreement. Seller shall pay its sub-contractor and suppliers promptly.

25.     Buyer, and/or Buyer's representatives, shall at all times have access to the work whenever it is in preparation or progress.

26.     Unless the drawings, plans and specifications set forth a more stringent standard,

12

10/21/14 vers

Seller shall leave the building at least "broom clean" at the completion of the work and remove all of Seller's tools, scaffolding, surplus materials and all rubbish from and about the Premises at Seller's sole cost and expense.

27.　　Seller shall notify Buyer upon completion of work by Seller so that a joint inspection of the Premises can be made by Seller and Buyer. Any items remaining to be completed to entirely complete the construction which are revealed by said inspection shall be set forth on a list (the "Punch List") compiled and signed by both Seller and Buyer, which list shall set forth an agreed upon approximate amount to complete such items. All work required to be done pursuant to the Punch List shall be completed within thirty (30) days of the date the Punch List is prepared. Buyer shall have no obligation to authorize the payment of the agreed upon approximate amount to complete the Punch List until all of said work is completed.

28.　　Except and unless specifically otherwise provided herein to the contrary, in the event any dispute shall arise between the parties hereto with respect to the provisions of this Agreement pertaining to the construction of the single family dwelling, said dispute shall be decided and determined by arbitrators. The complaining party shall provide written notification to the other party setting forth the complaints the complaining party desires to have resolved. Within fourteen (14) days after the date of said written notification, each party to this Agreement shall appoint one arbitrator who must be a disinterested third party with experience in Pennsylvania residential home construction. A third arbitrator shall be chosen by the two arbitrators aforementioned within ten (10) days after their appointment. The award of the majority of such arbitrators shall be binding and conclusive upon the parties hereto. The failure of any one of the parties to so appoint an arbitrator

13

shall authorize the other party making an appointment to make an appointment for him. If the two appointed arbitrators shall fail or be unable within ten (10) days to select a third arbitrator, then and in such event, a Judge of the Court of Common Pleas of the County where the building is being constructed, upon application made by either of the parties hereto for that purpose, is authorized and empowered to appoint such additional arbitrator. The third arbitrator shall serve as chairman of the arbitration panel. Each arbitrator shall have an equal voice in any decision, and the final decision shall be by majority vote of the arbitrators. The decision of the arbitrators shall be final and binding upon both parties hereto. Any arbitration pursuant to this paragraph shall constitute a "Common Law Arbitration" under Pennsylvania law.

29.     The price list, drawings, plans and specifications attached hereto are intended to coordinate and explain each other.

30.     The parties acknowledge that the construction consideration of Four Hundred Thirty Thousand Two Hundred Sixteen and 00/100 ($430,216.00) Dollars includes the following allowances: $8,400.00 for the kitchen appliances; $1,000.00 for Balusters; $1,000.00 Chandeliers; $500.00 for outdoor lighting; $6,750.00 for wood flooring (3000 sq. ft. at $2.25/sq.ft), $1,500.00 for Jucuzzi tub in master bathroom; $1,000.00 for basement bar; and $3,300.00 for flooring in the extra basement room. In the event the actual cost of an item exceeds the allowance, Buyer shall be responsible for payment of said excess amount, to the extent the same is reasonable, within (30) days after submission to Buyer of an invoice for the same by Seller. In the event the actual cost of said items shall not utilize the entire allowance, or if Buyer directly provides any of the above at Buyer's cost and expense, Buyer shall receive a credit from Seller against the contract price for the amount

14

10/21/14 vers

not utilized.

31.    This Agreement is expressly contingent upon Buyer obtaining a conventional permanent mortgage loan from a reputable financing institution of Buyer's choice, in an amount of not less than Three Hundred Ninety Thousand Two Hundred Sixteen and 00/100 ($390,216.00) Dollars, at a fixed interest rate not to exceed 4.25% per annum, for a term of not less than thirty (30) years. In the event Buyer makes bona fide application for, but is unable to obtain, said financing within thirty (30) days after complete execution of this Agreement by all parties, Buyer and Seller agree to negotiate in good faith to attempt to restructure the transaction to enable the single family dwelling and other improvements being constructed on the Premises to be completed and conveyed to Buyer by Seller.

32.    Seller represents and warrants that all persons and entities furnishing labor or material in relation to the construction of the single family dwelling have been, and will continue to be, promptly paid and that no mechanics liens or claims have been, or will be, filed against the Premises by Seller or by any materialman or subcontractor. At Settlement, Seller shall execute an Indemnity Agreement indemnifying Buyer against any such liens or claims, and such agreement will contain the personal guaranty of Seller's member, Jacob Rybner, which agreement shall be in form and substance acceptable to Buyer's counsel. This provision shall survive Settlement and shall not merge in the deed.

33.    This Agreement shall not be recorded in the office for Recording of Deeds or in any other office or place of public record.

34.    This Agreement contains the whole agreement between the Seller and Buyer and there

15

are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever.

35.    This Agreement shall not be assigned or transferred by either party without the written consent of the other being first had and obtained. Subject to the said provision regarding assignment, this Agreement shall extend to and bind the heirs, executors, administrators, successors and assigns of the respective parties hereto.

36.    This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania.

37.    All notices shall be in writing and shall be personally delivered or be sent postage prepaid by United States registered or certified mail, return receipt requested, to the last known residence of Buyer or office of Seller. Notice shall be deemed received on the date of personal delivery, or if mailed, on the date of receipt or refusal indicated on the return receipt, or in the event the notice is unclaimed, on the date of the first attempt to deliver as indicated by the appropriate postal authority. Each party shall immediately notify the other in writing of any change in mailing address.

38.    This Agreement has been drafted on a mutual basis by the parties hereto, and no provision shall be construed against either party on the basis of drafting responsibility.

39.    Each party shall deliver any further instruments and take such any further action as may be reasonably requested by the other in order to carry out the provisions and purposes of this Agreement.

40.    A modification or a waiver of any of the provisions of this Agreement shall be

16

effective only if made in writing and executed with the same formality as this Agreement. The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same of similar nature.

41.    All provisions of this Agreement pertaining to the post-Settlement construction of the single family dwelling shall survive this Agreement and shall not merge in the deed.

42.    This Agreement may be executed simultaneously in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Executed copies of this Agreement transmitted by facsimile or email shall be as binding as a copy bearing original signatures.

17

10/21/14 ver.

  **IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have either

executed this Agreement, or caused this Agreement to be executed by its duly authorized member, as

of the date set opposite their respective signature.


                              SELLER:
                              Falling Creek, LLC

Date:_____

                              By:_____
                              Jacob Rybner, member


                              BUYER:

Date: 10/22/14               _____
                              Benedict V. Sokolowski

                              _____
                              Lynda J. Sokolowski


18

10/21/14 vers

**IN WITNESS WHEREOF,** the parties hereto, intending to be legally bound, have either executed this Agreement, or caused this Agreement to be executed by its duly authorized member, as of the date set opposite their respective signature.

Date: _10/23/14_

SELLER:
Falling Creek, LLC

By: _[signature]_

Jacob Rybaer, member

BUYER:

Date: _____

_____
Benedict V. Sokolowski

_____
Lynda J. Sokolowski

18

## 5 FALLING WATER CR

| | | |
|---|---:|---|
| LAND | 60,000 | |
| HOUSE | 325,000 | |
| VERTICAL FRONT SIDING | 8000 | |
| ADDITIONAL 2 BASEMENT ROOMS | 15400 | |
| GUTTER GUARDS | 1500 | |
| LARGER WINDOWS | 30471 | |
| BONUS ROOM | 1500 | |
| SKY LIGHTS | 1800 | |
| ELEVATOR FRAME | 1500 | |
| GARAGE DOOR ADDER | 7500 | |
| PAVED DRIVEWAY | 12000 | |
| PREMIUM HVAC DUCTWORK | 3000 | |
| STEEL BEAM IN BASEMENT | 2000 | |
| INSULATION ADDER | 3445 | |
| PROPANE HEAT ADDITION | 3000 | |
| RETAINING WALL EXTERIOR WORK | 3600 | |
| | | |
| FRONT STEPS AND PLANTER PER PHOTO | 6,500 | |
| GLASS WALL/DOOR FOR WINE ROOM | 1,000 | |
| TREX DECKING ADDER | 3000 | |
| | 490,216 | |
| | | |
| | | |

*EXHIBIT A*

**!EEK**

| CREDITS/ALLOWANCES | |
|---|---|
| KITCHEN | 8400 |
| BALUSTROLS | 1,000 |
| CHANDELEIRS | 1000 |
| WOOD FLOORING | 6750 $2.25/FT.SQ. 3000 sq ft |
| OUTDOOR LIGHTING | 500 |
| MASTER JACUZZI TUB | 1,500 |
| BASEMENT BAR | 1,000 |
| EXTRA BASEMENT ROOM FLOORS | 3300 |
| | |
| ALLOWANCES | 23450 |